IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

FILED
APR - 2 2025
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INDICTMENT |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:25CR 00137 |
| | ) | CASE NO. _____ |
| EBUKA B. IWUAGWU, | ) | Title 18, United States Code, |
| | ) | Sections 1956(a)(1)(B)(i), |
| Defendant. | ) | 1956(h), 1957, and 2 |
| | ) | |

**JUDGE CALABRESE**

GENERAL ALLEGATIONS

At all times relevant to this Indictment, unless otherwise specified:

Defendant and Victims

1. Defendant EBUKA B. IWUAGWU was a citizen of Nigeria and resided in or around Atlanta, Georgia.

2. Victim 1 resided in or around Strongsville, Ohio, in the Northern District of Ohio, Eastern Division.

3. Victim 2, Victim 3, and Victim 4 resided in Pennsylvania, California, and Texas, respectively.

Financial Institution Accounts

4. Bank 1 was a federally insured financial institution based in New York, New York. Defendant controlled the following bank accounts at Bank 1:

    a. An individual checking account opened on or about December 13, 2018, in Defendant's name and ending in x3668 ("Defendant's Personal Account").

b. A business checking account opened on or about February 20, 2019, in the name of Woolslayer Companies LLC and ending in x9293 ("Woolslayer Account"). Defendant was listed as the authorized signer on the Woolslayer Account.

c. A business checking account opened on or about November 18, 2019, in the name of Trice Free Company and ending in x7997 ("Trice Free Checking Account"). Fictitious Person 1, a fictitious person, was listed as the authorized signer on the Trice Free Checking Account.

d. A business savings account opened on or about November 18, 2019, in the name of Trice Free Company and ending in x5195 ("Trice Free Savings Account"). Fictitious Person 1 was listed as the authorized signer on the Trice Free Savings Account.

5. Bank 2 was a federally insured financial institution based in Warren, Pennsylvania. Victim 2 controlled an individual checking account at Bank 2 ("Victim 2's Bank Account").

6. Bank 3 was a federally insured financial institution based in Midland, Texas. Victim 4 controlled an individual checking account at Bank 3 ("Victim 4's Bank Account").

7. The Money Transmitter Business was a mobile international money transmission business based in Boston, Massachusetts. Defendant controlled the following accounts with the Money Transmitter Business:

a. An account opened on or about July 30, 2018, in Defendant's name ("Defendant's MTB Account").

b. An account opened on or about April 29, 2019, using a fictious Georgia Driver's License in the name of Fictitious Person 2, which closely resembled Defendant's own

2

Georgia Driver's License, including a photograph of Defendant's ("Fictitious Person 2 MTB Account").

## Wire Fraud Schemes

8. Wire Fraud Schemes were fraudulent schemes in which perpetrators, using interstate and international wire communications and transmissions, obtained money and other things of value from victims through fraudulent pretenses. Examples of Wire Fraud Schemes included Romance Fraud Schemes and Pandemic Unemployment Fraud Schemes.

    a. Romance Fraud Schemes were fraudulent schemes in which perpetrators, using assumed identities and other misrepresentations, formed close personal relationships with victims in order to gain victims' trust and then use that trust to obtain money and other things of value from victims. Perpetrators found victims on social media and other online platforms, such as online dating websites, and initiated relationships with victims based on false pretenses. The personal relationships were often romantic in nature, but physically remote. Perpetrators often engaged in extensive intimate conversations with victims, including through telephone calls and text exchanges over email and messaging platforms, gaining victims' affection and trust. The perpetrators then requested money and other things of value from the victims under false pretenses, often claiming that the funds were for an urgent need (such as costs associated with a medical or legal emergency), for furthering the relationship (such as travel costs for meeting in person), or for investment purposes (such as assisting the perpetrators in completing a lucrative transaction). Relying on those and other misrepresentations, perpetrators then convinced victims to send and transport money and other things of value, directing funds to be sent and transported to co-conspirators, often with those co-conspirators represented to be, and posing as, third parties.

b. Pandemic Unemployment Fraud Schemes were fraudulent schemes in which persons applied for and obtained unemployment benefits, administered by various state agencies, which provided federal funds made available for unemployment insurance in response to the COVID-19 pandemic. The State of Washington's Employment Security Department was one such state agency. Pandemic Unemployment Fraud Schemes often involved the use of identity theft victims' information, with perpetrators obtaining benefits in the names of victims while directing those funds to accounts they or their designees controlled, rather than to the victims.

## COUNT 1
(Money Laundering Conspiracy, 18 U.S.C. § 1956(h))

The Grand Jury charges:

9. The factual allegations contained in paragraphs 1 through 8 of this Indictment are incorporated by reference as if stated fully herein.

### The Conspiracy

10. From in or around March 2020, through in or around May 2020, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant EBUKA B. IWUAGWU, and others known and unknown to the Grand Jury, did knowingly and intentionally combine, conspire, confederate and agree with each other to commit offenses against the United States in violation of Title 18, United States Code, Section 1956 and Section 1957, that is:

a. to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, Wire Fraud in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified

4

unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

      b.    to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument or funds involving the proceeds of specified unlawful activity, that is, Wire Fraud in violation of Title 18, United States Code, Section 1343, from a place in the United States to or through a place outside the United States, knowing that the funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i); and

      c.    to knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, that is, Wire Fraud in violation of Title 18, United States Code, Section 1343, in violation of Title 18, United States Code, Section 1957.

The Objects of the Conspiracy

11.    The objects of the conspiracy included, but were not limited to, the following: for the conspirators to unjustly enrich themselves and their designees by (a) obtaining proceeds of Wire Fraud Schemes in accounts controlled by conspirators and transferring those proceeds to other accounts, (b) using domestic and international transfers of the proceeds to conceal the true nature and control of the funds, (c) diverting proceeds for the conspirators' use and the use and

benefit of others and to further the conspiracy, and (d) concealing the conspiracy and identities of the perpetrators of the Wire Fraud Schemes.

## Manner and Means of the Conspiracy

12. It was part of the conspiracy that:

    a. Defendant and his co-conspirators received the proceeds of various Wire Fraud Schemes, including Romance Fraud Schemes and Pandemic Unemployment Fraud Schemes.

    b. Defendant and his co-conspirators directed funds from Wire Fraud Schemes into accounts controlled by conspirators, including Defendant, through various means, including the following:

        i. The conspirators, through a Romance Fraud Scheme, caused Victim 1 to deposit approximately $37,500 into the Woolslayer Account.

        ii. The conspirators, through a Romance Fraud Scheme, caused Victim 2 to wire a total of approximately $20,800 from Victim 2's Bank Account to the Woolslayer Account and the Trice Free Checking Account.

        iii. The conspirators, through a Romance Fraud Scheme, caused Victim 3 to deposit approximately $21,565 into the Trice Free Checking Account.

        iv. The conspirators, through a Romance Fraud Scheme, caused Victim 4 to wire approximately $65,500 from Victim 4's Bank Account to the Trice Free Checking Account.

        v. The conspirators, through a Pandemic Unemployment Fraud Scheme, caused the Washington Employment Security Department to transfer approximately $51,948 in unemployment benefits intended for persons other than Defendant or Fictitious

Person 1, including identity theft victims, into the Trice Free Checking Account and the Trice Free Saving Account.

  c. Defendant maintained accounts in the names of purported businesses and other individuals, including fictitious persons, to receive and transfer proceeds from Wire Fraud Schemes.

  d. Defendant, having received proceeds from the Wire Fraud Schemes, engaged in further financial transactions with those proceeds in order to return funds to co-conspirators and convert some of the proceeds to his personal benefit, while obscuring the connection of the funds to the Wire Fraud Schemes and the victims.

  e. Defendant caused a portion of the proceeds to be transferred from Defendant's various bank accounts, through Defendant's MTB Account and the Fictitious Person 2 MTB Account, to Nigerian accounts.

  f. Defendant also retained and used for his own benefit a portion of the funds that he received.

All in violation of Title 18, United States Code, Section 1956(h).

COUNTS 2-7
(Money Laundering, 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2)

The Grand Jury further charges:

  13. The factual allegations contained in Count 1 of this Indictment are incorporated by reference as if stated fully herein.

  14. On or about the dates listed below, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant EBUKA B. IWUAGWU did knowingly conduct and attempt to conduct the following financial transactions affecting interstate commerce, which transactions involved the proceeds of specified unlawful activity, that is, Wire Fraud, in violation of Title 18

United States Code, Sections 1343, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, to wit: Defendant, after having received Romance Scam Fraud proceeds from Victim 1 into the Woolslayer Account, caused the proceeds to be transferred to Defendant's Personal Account, and then caused the following transactions to be conducted from Defendant's Personal Account with the proceeds, each transaction constituting a separate count of this Indictment:

| Count | Date | Amount | Transaction Description |
| --- | --- | --- | --- |
| 2 | April 3, 2020 | $3,000 | ATM withdrawal in or around Doraville, Georgia |
| 3 | April 3, 2020 | $2,000 | Outgoing money transfer using the Fictitious Person 2 MTB Account |
| 4 | April 4, 2020 | $2,674 | Outgoing money transfer using the Fictitious Person 2 MTB Account |
| 5 | April 5, 2020 | $2,674 | Outgoing money transfer using the Fictitious Person 2 MTB Account |
| 6 | April 8, 2020 | $5,000 | E-Withdrawal at an ATM |
| 7 | April 8, 2020 | $2,674 | Outgoing money transfer using the Fictitious Person 2 MTB Account |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

COUNT 8
(Engaging in Monetary Transactions in Criminally Derived Property, 18 U.S.C. §§ 1957 and 2)

The Grand Jury further charges:

15. The factual allegations contained in Count 1 of this Indictment are incorporated by reference as if stated fully herein.

16. On or about April 8, 2020, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant EBUKA B. IWUAGWU, did knowingly engage and attempt to engage in a monetary transaction by, through, or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, an $11,000 transfer from the Woolslayer Account to Defendant's Personal Account, such property having been derived from a specified unlawful activity, that is, Wire Fraud in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Sections 1957 and 2.

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.